## Archie Woods, Appellee, v. Toledo, St. Louis & Western Railroad Company, Appellant.

1. COMMON CARRIERS—*burden to explain delay in transportation.* If it be shown by the plaintiff that the delay of the carrier in transporting horses was unusual, the burden shifts and is cast upon the defendant to explain such delay and to show that it did not result from its negligence.

2. EVIDENCE—*refreshing recollection.* A witness may properly be permitted to refresh his recollection by reference to records contemporaneous with the fact.

3. EVIDENCE—*when telegrams incompetent.* Telegrams merely hearsay and self-serving in character are incompetent.

4. PROPOSITIONS OF LAW—*must not ignore essential elements.* In an action against a carrier for damages occasioned by delay in transporting horses, *held,* that a proposition of law was properly refused because it ignored the duty of such carrier to inspect its locomotive.

5. PROPOSITIONS OF LAW—*when refusal of correct will not reverse.* A correct proposition of law may properly be refused if its contents are substantially contained in other propositions given.

6. PROPOSITIONS OF LAW—*province of court.* A proposition of law which infringes upon the province of the court as a trier of the facts is properly refused.

Trespass on the case. Appeal from the Circuit Court of Edgar county; the Hon. W. B. SCHOLFIELD, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed December 7, 1910.

F. C. VAN SELLAR and C. E. POPE, for appellant; CHARLES A. SCHMETTAU, of counsel.

H. S. TANNER and J. E. DYAS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit to recover damages alleged to have accrued to the plaintiff by the unreasonable delay of the defendant in transporting a shipment of 12 horses from Metcalf to East St. Louis. A trial of the cause by the court without a jury resulted in a finding and

judgment against the defendant for $417.50, to reverse which judgment it prosecutes this appeal.

Prior to Monday, February 15, 1910, the plaintiff had ordered a stock car to be delivered at Metcalf for the purpose of carrying the horses to East St. Louis and at about 2 o'clock in the afternoon of that day the horses were loaded into said car with the knowledge of defendant's agent and a bill of lading was then issued to the plaintiff therefor. The schedule time for the arrival at Metcalf of a local stock train, known as No. 27, was 3:20 o'clock in the afternoon and stock was usually carried by said train to Charleston and from thence to East St. Louis by a through freight train. The usual time for the carriage of stock by such route from Metcalf to East St. Louis was 13 hours. The car in which the horses were loaded, and in which they remained with the knowledge of defendant's agent, did not leave Metcalf until 9:30 o'clock in the forenoon of Tuesday, February 16th, and arrived in East St. Louis at about 11 o'clock at night. The horses were unloaded at the stock yards the following morning and were considerably bruised and otherwise injured by their long confinement in the car.

The evidence for the plaintiff tends to show that when the horses were loaded into the car at Metcalf it was contemplated that the car would leave there at about 3 o'clock and that the agent of the defendant so informed the agent of the plaintiff; that when the local freight train failed to arrive at Metcalf in the afternoon, or thereafter until the following morning, the agent of the defendant from time to time informed the agent of the plaintiff that the train would arrive at 5 o'clock, at 8 o'clock and at 12 o'clock the same afternoon and night and at 4 o'clock the following morning; that at about 5 o'clock in the morning of February 16th, a freight train known as No. 41, which could have carried the horses to East St. Louis passed through Metcalf without stopping; that the deprecia-

tion in the market value of the horses occasioned by their long confinement in the car and the unusual delay in their transportation was $417.50.

It must be conceded that the delay in transporting the horses from Metcalf to East St. Louis was unusual, and it follows that the burden was cast upon the defendant to explain such delay and to show that it did not result from its negligence. Shoot v. C. C. C. & St. L. R. R. Co., 145 Ill. App. 532.

Defendant sought to meet the burden cast upon it by attempting to show that train No. 45 which was scheduled to arrive at Metcalf at 8 o'clock in the evening was unable to be moved on account of bad weather conditions prevailing east of Frankfort, Indiana, and injury to telegraph wires, and because of the breaking of one of the axles on the locomotive which was hauling said train, whereby said train lost its rights and its operation under the time schedule was necessarily annulled.

The testimony of the local agent of the defendant at Metcalf was in direct conflict with the evidence introduced on behalf of the plaintiff relative to the circumstances attending the loading of the horses into the car and the statements alleged to have been made to the agent of the plaintiff relative to the expected arrival of the train. We are not however justified in holding that the finding of the court upon these controverted issues was erroneous. The defendant introduced no evidence whatever to account for the failure of train No. 27 to be operated on February 15th, and there is no substantive evidence in the record to warrant a finding that the failure of train No. 45 to reach Metcalf was attributable, without the fault of the defendant, to bad weather conditions. In this latter regard the evidence consists merely of hearsay and the conclusion of the witnesses. The failure of defendant to carry the horses on train No. 41 is sought to be excused solely upon the ground that said train did not customarily stop at Metcalf. Defendant knew at the time

train No. 41 passed through Metcalf at 5 o'clock in the morning of February 16th, that the horses had been in the car awaiting shipment since 2 o'clock in the afternoon of the preceding day, and whether or not the defendant was guilty of negligence in failing to carry the horses on that train was a question of fact for the court. The claim of the defendant that train No. 45 was unavoidably delayed in reaching Metcalf by reason of the breaking of an axle on the locomotive is not supported by the evidence. There is no evidence tending to show that the locomotive was properly inspected prior to the accident.

It is urged that the court improperly refused to permit the defendant to show that it was not unusual for horses to be bruised upon their arrival at the stock yards from Metcalf. If the inquiry had been limited to showing the usual conditions of horses as to being bruised upon their arrival at the stock yards from Metcalf in the ordinary course of shipment, and within the time usually required to carry horses that distance, we think the evidence would have been competent as bearing upon the question of damages, but no such limitations were incorporated in the inquiry and the proffered evidence was properly rejected. In Sinsabaugh v. C. C. C. & St. L. Ry. Co., 149 Ill. App. 430, in discussing a somewhat similar question we said: "It may be conceded, and we think there is some merit in the contention, that the depreciation in the market value of live stock caused by delay in transportation should be limited to the extent of the delay only, because any confinement of live stock in cars will probably result in some depreciation in its market value, for which depreciation the carrier should not be held responsible."

There was no impropriety in permitting the witness Whitsen to testify after refreshing his recollection by reference to the auctioneer's list of horse sales that he sold the horses in question upon a guarantee only of "wind and work."

It is urged that the court improperly refused to permit the defendant to introduce in evidence certain telegrams sent by defendant's local agent to its train dispatcher and by such train dispatcher to its local agent, relative to the movement of trains and the carriage of the horses. The telegrams were properly excluded as being mere hearsay and self-serving statements. Defendant cannot escape liability for the negligence of its servants even though such negligence was occasioned by the failure of said servants to comply with its directions.

The other errors assigned upon the rulings of the court in excluding certain evidence are not of sufficient importance to merit discussion.

Defendant offered no evidence in diminution of the amount of damages claimed by the plaintiff and the damages are not excessive.

The eighth proposition of law submitted by defendant was properly refused because it ignored the duty of the defendant to inspect its locomotive. The ninth and tenth propositions of law submitted by defendant and refused by the court were sufficiently covered by the third and fourth propositions of law held as the law applicable to the case, and the eleventh and twelfth propositions of law refused by the court were sufficiently covered by the fifth and sixth propositions of law marked by the court as "held." The thirteenth and fourteenth propositions submitted by defendant to be held by the court as the law of the case were properly refused because they infringed upon the province of the court as a trier of the facts and were improperly submitted as propositions of law.

There is no reversible error in the record and the judgment of the Circuit Court will be affirmed.

*Affirmed.*